UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CLOVELLY OIL CO. LLC, | * | CIVIL ACTION |
| Plaintiff, | | NO. |
| | * | |
| Versus | * | SECTION: |
| | * | |
| | | DISTRICT JUDGE: |
| BTB REFINING, LLC, KINSALE INSURANCE COMPANY, GLOBAL OIL MANAGEMENT GROUP, LTD., | * | |
| HARRY SARGEANT, III AND KEVIN KIRKEIDE, | * | MAGISTRATE JUDGE: |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

The Complaint of Plaintiff, CLOVELLY OIL CO. LLC, who alleges and avers as follows:

### PARTIES

1.  Plaintiff, CLOVELLY OIL CO. LLC ("*Clovelly*"), is a limited liability company organized under the laws of the State of Delaware, which is both domiciled and has its principal place of business in Orleans Parish, Louisiana.

2.  Defendant, BTB REFINING, LLC ("*BTB*"), is a limited liability company organized under the laws of the State of Texas, and which is both domiciled and has its principal place of business in Nueces County, Texas.

3.  Defendant, KINSALE INSURANCE COMPANY ("*Kinsale*"), is a foreign insurance company domiciled in Arkansas and authorized to do and doing business in Louisiana. **Kinsale** is and has at all times relevant been the commercial general liability insurer of BTB.

4. Defendant, GLOBAL OIL MANAGEMENT GROUP, LTD. ("*Global Oil*"), is a foreign company with its principal place of business in Boca Raton, Florida.

5. Defendant, HARRY SARGEANT, III ("*Sargeant*"), is a citizen and resident of Palm Beach County, Florida and the owner, member, manager, or director of **BTB** and **Global Oil**.

6. Defendant, KEVIN KIRKEIDE ("*Kirkeide*"), is a citizen and resident of Palm Beach County, Florida and the owner, member, manager, or director of **BTB** and **Global Oil**.

## VENUE AND JURISDICTION

7. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the parties are diverse in citizenship and the amount in controversy exceeds the jurisdictional minimum of $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over **BTB**, **Global Oil**, **Sargeant**, and **Kirkeide** under Rule 4 of the Federal Rules of Civil Procedure and in accordance with the Louisiana Long-Arm Statute, LA. REV. STAT. § 13:3201 *et seq*., because the causes of action asserted herein arise out of **BTB**, **Global Oil**, **Sargeant**, and Kirkeide's transacting business in this State, contracting to supply services in this State, and causing injury and damage in this State by their negligent conduct in this State. This Court has personal jurisdiction over **Kinsale** pursuant to Louisiana's Direct-Action Statute, LA. REV. STAT. § 22:1269.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Eastern District of Louisiana and a substantial part of the property that is the subject of the action is situated in the Eastern District of Louisiana.

## FACTS

10. At all material times, **Clovelly** owned and operated the West Lake Pontchartrain East Block 41 Oil and Gas Production Facility (the "*Platform*") located in Lake Pontchartrain, approximately one and one-quarter miles north of the city limits of Kenner, Louisiana.

11. The **Platform** processes oil, gas, and produced water from three oil wells and one gas well located near (but at different distances from) the **Platform**.

12. Production from those wells is transported to the **Platform** via separate four-inch oil or gas flowlines.

13. The **Platform** consists of process separators, treaters, tanks, pumps, measurement equipment, a gas compressor, and pollution containment systems located on its upper deck, and oil, water, and ballast storage compartments located in its concrete hull.

14. The **Platform** is manned 24 hours a day, seven days week, and has personnel quarters and utilities to support manned operations.

15. On or about October 2, 2017, **Clovelly** entered into an oral agreement with third-party contractors, **BTB** and **Global Oil**, to perform wax paraffin cleaning services to three oil flowlines, attached respectively to State Lease 4041 Well No. 1 Well (Serial No. 133600), State Lease 4041 Well No. 3 Well (Serial No. 136306), and State Lease 5568 Well No. 1 Well (Serial No. 137574), all of which are connected to the **Platform** via separate four-inch flowlines.

16. **BTB** and **Global Oil's** flowline paraffin wax cleaning service consists of decomposing hydrogen peroxide ($H_2O_2$) upon contact with a patented "Hydra" catalyst into water, oxygen gas and heat, thereby producing steam and pressure through an exothermic reaction.

17. The produced heat (steam) generated by this process was injected into the flowlines and was designed to melt the wax paraffin accumulations on the interior diameter walls of the oil flowlines.

18. The melted wax paraffin and water mixture was pressure flushed through the length of the oil flowlines to the **Platform**, where the effluent flowed into a 400 barrel, welded galvanized steel tank (the "*Tank*") located on the **Platform**'s upper deck for ultimate disposal.

19. Using this process, **BTB** and **Global Oil** successfully cleaned the oil flowlines for State Lease 4041 Well No. 1 Well (Serial No. 133600) and State Lease 4041 Well No. 3 Well (Serial No. 136306), without incident.

20. On the evening of October 15, 2017, **BTB** and **Global Oil** were engaged in cleaning the four-inch oil flowline attached to State Lease 5568 Well No. 1 (Serial No 137574) using the same process and procedures they used to clean the flowlines for State Lease 4041 Well No. 1 Well (Serial No. 133600) and State Lease 4041 Well No. 3 Well (Serial No. 136306).

21. During the process, at approximately about 7:18 p.m., a catastrophic explosion and fire occurred in and around the **Tank** causing substantial damage to the **Platform** and its equipment (the "*Incident*").

22. As a result of the Incident, Clovelly has been forced to shut-in the Wells, causing substantial damage to Clovelly in the form of lost revenue, lost profits, lost opportunity, and the potential loss of its leases due to non-production.

## COUNT ONE

### Breach of Contract

23. **Clovelly** realleges and reavers the allegations of Paragraphs 1-21 inclusive, as if set forth herein *in extenso*.

24. **Clovelly** contracted with **BTB** and **Global Oil** to clean wax paraffin from the flowline attached to the State Lease 5568 Well No. 1, and to do so in a safe and effective manner without damaging Clovelly's property.

25. **Clovelly** relied upon the knowledge and expertise of **BTB** and **Global Oil** in entering into this contract.

26. **BTB** and **Global Oil** breached their contract with **Clovelly** by rendering a defective performance of the contract, causing serious damage to **Clovelly's** property.

27. **BTB** and **Global Oil** were both obligated for the entire performance of the contract to **Clovelly**, and are therefore solidary obligors under the contract.

28. In the alternative, **BTB** and **Global Oil's** obligations under the contract, if joint, are nevertheless indivisible, and thus **BTB** and **Global Oil** are solidarily liable to **Clovelly** for damages caused by their breach of these obligations.

## COUNT TWO

### Tort

29. **Clovelly** realleges and reavers the allegations of Paragraphs 1-27 inclusive, as if set forth herein *in extenso*.

30**.** **BTB** and **Global Oil**, as **Clovelly**'s contractors engaged to clean wax paraffin from the flowline attached to the State Lease 5568 Well No. 1, had in their custody, control, and garde, during the cleaning operation, the chemical compounds and catalysts, and other equipment used to clean the wax paraffin from its flowline.

31. **BTB** and **Global Oil** were solely responsible for the safe operation of the process, procedures, and equipment used to clean the oil flow line for State Lease 5568 Well No. 1 of its accumulated wax paraffin at the time of the **Incident**.

32. The **Incident** that damaged the **Platform** was proximately caused by the fault, negligence, and/or strict liability of **BTB** and **Global Oil**, their equipment, employees, processes and/or procedures, and/or by those persons and equipment for whom **BTB** or **Global Oil** is legally responsible, in the following non-exclusive particulars:

a. Failing to properly mix hydrogen peroxide and the patented catalyst prior to injection into the flowline for State Lease 5568 Well No. 1;

b. Failing to deoxidize Oxygen generated during the chemical reaction creating steam to melt wax paraffin and clean the flowline for State Lease 5568 Well No. 1 during the cleaning process;

c. Failing to monitor and/or regulate and/or control the process that generated the pressure introduced into the flowline for State Lease 5568 Well No. 1 during the cleaning process;

d. Failing to monitor and/or regulate and/or control the process that generated the temperature introduced into the flowline for State Lease 5568 Well No. 1 during the cleaning process;

e. Failing to have adequately trained personnel responsible for monitoring and/or regulating and/or controlling the process, and administering, the cleaning process of the flow line for State Lease 5568 Well No. 1;

f. Failing to have adequate and proper equipment used during the process to clean the flow line for State Lease 5568 Well No. 1; and

g. All such other acts of fault, negligence, and/or strict liability as may be shown at the trial of this case.

33. In addition to the above stated acts of fault, negligence, and/or strict liability, **Clovelly** avers, in the alternative, that its damages were directly and proximately caused by acts or omissions of **BTB** and/or **Global Oil**, which acts or omissions may be beyond proof by **Clovelly**, but which are within the knowledge and control of **BTB** and **Global Oil**, there being no other possible conclusion that the **Incident**, and the damages suffered by **Clovelly**, were caused by and resulted from the negligence of **BTB** and/or **Global Oil**.

34. **Clovelly** specifically pleads the doctrine of *res ispa loquitur*.

35. The **Incident** and resulting damage occurred through no fault of **Clovelly**.

## COUNT THREE

### Single Business Enterprise Theory, Alter Ego Doctrine, and Veil Peircing

36. **Clovelly** realleges and reavers the allegations of Paragraphs 1-35 inclusive, as if set forth herein *in extenso*.

37. **BTB** and **Global Oil** functioned as the alter ego of **Sargeant** and **Kirkeide**, such that the Court must pierce the corporate veils erected by **BTB** and **Global Oil**, and impose personal liability for the **Incident** on **Sargeant** and **Kirkeide**.

38. In the alternative, **BTB**, **Global Oil**, **Sargeant**, and **Kirkeide** are, and have at all times relevant hereto, been operating as a single business enterprise. Therefore, the separate identities of **BTB**, **Global Oil**, **Sargeant**, and **Kirkeide** should be disregarded, and **Sargeant** and **Kirkeide** should be held liable to **Clovelly** for the actions of **BTB** and **Global Oil** that caused the **Incident.**

39. The separate identifies of **BTB**, **Global Oil**, **Sargeant**, and **Kirkeide** should be disregarded and treated as one entity under the single business enterprise theory due to the following non-exclusive reasons:

      a.      **Sargeant** and **Kirkeide** are the owners of both **BTB** and **Global Oil** such that there is identity or substantial identity of ownership;

      b.      **Sargeant** and **Kirkeide** are the common directors or officers of both **BTB** and **Global Oil**;

      c.      There is a unified administrative control of **BTB** and **Global Oil** whose business functions are similar or supplementary;

      d.      **Sargeant** and **Kirkeide**, as the directors and officers of **BTB** and **Global Oil,** act independently in the interest of **BTB** and **Global Oil**;

      e.      **Sargeant** and **Kirkeide** finance **BTB** through **Global Oil** and vice versa;

      f.      **Sargeant** and **Kirkeide** inadequately capitalize both **BTB** and **Global Oil**;

      g.      **Sargeant** and **Kirkeide** caused the incorporation of both **BTB** and **Global Oil**;

      h.      **Sargeant**, **Kirkeide**, **BTB**, and **Global Oil** pay the salaries, other expenses, or losses of one another;

      j.      **Sargeant, Kirkeide, BTB**, and **Global Oil** each use the property of the other;

      k.      **BTB** and **Global Oil** fail to comply with corporate formalities;

      l.      **BTB** and **Global Oi**l employ common employees between each other;

      m.      **Sargeant, Kirkeide, BTB**, and **Global Oil** employees render services on behalf of the others;

      n.      **Sargeant, Kirkeide, BTB,** and **Global Oil** share common offices;

      o.      **Sargeant, Kirkeide, BTB**, and **Global Oil** use centralized accounting with each other;

p.     **Sargeant, Kirkeide, BTB**, and **Global Oil** conduct undocumented transfers of funds between each other; and

q.     **Sargeant, Kirkeide**, **BTB**, and **Global Oil** fail to allocate profits and losses between each other.

40.    In the alternative, **Clovelly** asserts that public information on whether **Global Oil** is its own corporate entity providing the benefit of limited liability is inconclusive.  To the extent **Global Oil** is not a juridical entity but is simply an operating name, veil piercing is unnecessary, and **Sargeant** and **Kirkeide**, as to the owners of **Global Oil**, are personally liable to **Clovelly** for all damages caused by the **Incident**.

41.    In the further alternative, **Clovelly** asserts that **BTB's** charter has been revoked by the Texas Secretary of State, that **Sargeant** and **Kirkeide** are, therefore, not entitled to the benefit of limited liability, and that they are personally liable to **Clovelly** for all damages caused by the **Incident**.

## DAMAGES

42.    **Clovelly** realleges and reavers the allegations of Paragraphs 1-41 inclusive, as if set forth herein *in extenso*.

43.    As a result of the **Incident**, **Clovelly** has sustained damages in excess of $2,700,000, in the form of damage to its platform, lost revenue, lost profit, lost opportunity, and the potential loss of its leases for failure to produce, and continues to sustain additional damages, all of which will be shown at the trial of this matter.

44.    **Clovelly** is entitled to recovery of all losses and damages sustained as a result of the **Incident**, plus prejudgment interest, costs, past and future lost profits, and all such other damages as may be proved at the trial of this matter.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, CLOVELLY OIL CO. LLC, prays that:

1. Defendants, BTB REFINING, LLC, GLOBAL OIL MANAGEMENT GROUP, LTD., KINSALE INSURANCE COMPANY, HARRY SARGEANT, III, and KEVIN KIRKEIDE be served with a copy of this Complaint, and cited to appear and answer same, and that, after due proceedings are had, there be judgment rendered herein in favor of Plaintiff, CLOVELLY OIL CO. LLC, and against Defendants, BTB REFINING, LLC and GLOBAL OIL MANAGEMENT GROUP, LTD., KINSALE INSURANCE COMPANY, HARRY SARGEANT, III, and KEVIN KIRKEIDE for all damages, costs, prejudgment interest, loss of past and future profits, as their respective interest appear, caused by the **Incident**, as will be shown at the trial of this matter.

2. This Honorable Court grant Plaintiff, CLOVELLY OIL CO. LLC, all such other and further relief as it may be entitled to under the law.

New Orleans, Louisiana, this 3rd day of December, 2017

_____/s/Matthew J. Fantaci_____
M. TAYLOR DARDEN (La. Bar No. 04546), T.A.
MATTHEW J. FANTACI (La. Bar No. 28036)
BRANDON T. DARDEN (La. Bar No. 37089)
ANDREW J. BRIEN (La. Bar No. 37051)
**CARVER, DARDEN, KORETZKY, TESSIER, FINN, BLOSSMAN & AREAUX, L. L. C.**
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163
Telephone No.: (504) 585-3800
Facsimile No.: (504) 585-3801
darden@carverdarden.com
fantaci@carverdarden.com
bdarden@carverdarden.com
brien@carverdarden.com

*Attorneys for Plaintiff, CLOVELLY OIL CO. LLC*

4851-3472-1111, v. 6